Okay, counsel, we've read your briefs and your record excerpts, and to that extent, we're familiar with your cases. I think you're all familiar with our lighting system, and you now have a readout on your side of the podium that tells you how much time you have left. Judge Clement and I are so happy to have Judge Lee Rosenthal from Southern District of Texas sit with us for part of this week. All right, with that, we call the first case, U.S. v. St. Clair, and we'll hear first from Mr. Sherwood. May it please the Court, Gregory Sherwood for the appellant Charles St. Clair, VI. I wanted to give a brief background, because I think the background is important to see the final goals that could be reached by this case. And I'm going to concentrate on point two of the second prong of the plain error case, a test. This is a plain error case. When the parties originally filed their briefs, it looked like we were going to be arguing prongs three and four, whether substantial rights were affected and whether this Court should exercise its discretion. After this Court sent its March 6, 2015 letter for supplemental briefs, the government changed its position on prong two, and now argues that the error is not clear or obvious and it's subject to reasonable debate, based in part on the Court's unpublished 2013 January opinion in Ramirez, and also Judge Dennis' in-chambers published order in Emory from last December. But what's important to realize from a factual standpoint is at this moment, Mr. St. Clair is a career offender. He is locked in at level 37 on the guidelines. He cannot file a Rule 3582 motion for a lower sentence based on the 2014 retroactive drug guideline amendments. Would that be true if we were to find that he was not a career offender but that there was no plain error? That's an excellent point, Judge Rosenthal. That would be one goal I would want to reach in this appeal would be some decision by this Court, finding that he was not a career offender so that perhaps he could file a 2255 motion and a 3582 motion. But I don't know what the success of that would be. But that's one reason this appeal needed to be made. He could not have just filed a 2255 motion at this point because he's still locked in as a career offender. And his other objections were not substantively ruled on by Judge Smith in Waco based on his career offender status. So that would be a reason why this Court should exercise its discretion so that a ruling could be made on those objections. The substantial rights were affected because of the 2014 drug guideline retroactive amendment. If that amendment had not been passed, I would have been stuck because his 360-month sentence that he received would have been within the corrected guideline range. But that's no longer the case with the 2014 retroactive amendments. That doesn't affect anything unless the case is remanded, though, does it? Yes, that's correct. This Court would have to vacate and remand for resentencing. If that does not happen, then the client is stuck with trying to file a 2255 motion along with a 3582. Would the remand also include a consideration of the objections that were considered moot by the district court? Yes, I would argue yes, and I did in my initial brief and in the prayers of my subsequent briefs that because, and I think I listed in pretty detail what happened, the transcriptions, it's very clear that even though trial counsel got a ruling on those objections, they were not substantive rulings because the parties were saying to Judge Smith, well, if he's a career offender, that moots the other objections. And Judge Smith said, well, do you want a ruling? Yes, Judge. Okay, they're overruled. He really didn't consider whether those other objections should or should not substantively be overruled. Understandably so, because at that point in time it wouldn't have made any difference because of the career offender status. So, yes, I would argue that a remand should include a consideration of those other objections. Now, the main question today is whether this error is clear or obvious and not subject to reasonable debate. And I will admit I glossed over the not subject to reasonable debate in my initial brief. To me, the error was clear or obvious because I'm thinking, well, this is just like Constante from 2008 when this court held that a burglary under A3, which does not have a specific intent to commit an offense, is not a generic burglary under Taylor. And the definitions in both the Armed Career Criminal Act and in this career offender guideline are so similar they're almost identical. The only difference is one says burglary of habitation, the other says burglary. All of Mr. St. Clair's convictions are burglary of habitation, so that distinction does not matter. Now, the water was muddied by the Ramirez opinion from January 2013, and it's a troubling opinion. I couldn't figure out quite what was going on. I believe Judge Davis was on the panel, so of course he will know more than I will about that. But I looked at the briefs. It's from Judge Lindsay in Dallas, and I've handled cases from him. In fact, one of my cases remanded two summers ago was remanded back to him, and I appeared before him at resentencing. And from my memory, I didn't detail, look at detail, look at the record. But it seemed to me that Judge Lindsay in that case was saying, well, Constante held it's not a generic burglary, but Constante didn't say whether an A3 burglary could be a crime that's otherwise, under the otherwise or residual clause. Well, to me, yes, of course a burglary resents a substantial risk of injury to another, but you never reach that question because Congress and the Commission decided to name four offenses in the first part of that clause. Burglary, arson, offenses involving explosives, and extortion. So if you have those four offenses, I submit you don't even look at the otherwise or residual clause because the four named offenses are in that part of the first part of the clause. If the court were to interpret an A3 burglary as being in the residual clause, then we might as well erase those enumerated clauses because the otherwise clause will swallow up everything else. And that will have the effect of overruling Constante. And one panel cannot overrule another panel. So to me, to me since this was— Congress would have overruled Constante with that interpretation. Not quite. Because all Ramirez says is that issue wasn't decided. And that's the troubling aspect of Ramirez is literally Ramirez says we didn't decide that issue and Constante will decide it another day. But when you think about it, if the court is going to make that decision, then it has the effect of over— Constante is wiped away if this court today or the Ramirez opinion is interpreted as holding. Well, then an A3 burglary is not a generic burglary under the first part of that clause. But it can be a burglary under the otherwise clause because it provides—it has a substantial risk of injury to another. So that's the troubling aspect of Ramirez. Judge Dennis's order in Emory seems to say—he agrees that—and Emory was a case, a pro se case on a motion to recall the mandate. And Judge Emory—I'm sorry, Judge Dennis was pointing out in his order, well, to recall the mandate, we have to—he has to prove plain error. And to prove plain error, there has to be a substantial risk that he'll prevail. And the Ramirez opinion casts some doubt on that. And footnote three of his order is interesting in that it says perhaps another panel will read Ramirez differently than Constante. It's almost like a prelude to what we have today. But I would argue that an A3 burglary is not covered by the residual clause because it's a named offense. This Court's Davis case was a robbery. Robbery is not one of the named offenses. The James opinion from the Supreme Court in 2007, that was an attempted burglary. So I could see why an attempted burglary would be in the residual clause because it's not a named offense. But if we have burglary, arson, extortion, or use of explosives, we look at that first part of the clause. We don't look at the otherwise or residual clause. It has to be a generic burglar though, right? Yes, under the Supreme Court's interpretation of Taylor, it has to be. And that may be why a lot of attorneys are missing this at the trial court level. And I would have missed it until I started working in this area because I would have said, oh, it's a burglary. The guideline of the statute says burglary. That's it. If one does not know about Constante that says not all burglaries are burglaries or about Taylor, any state statute that has a divisible statute with possible theories of burglary, you've got to be careful. And that's why I said in my initial brief that not all burglaries are burglaries. The Texas statute distinguishes between with intent to commit a felony or just to enter a building. Yes, yes. That is the key distinction. I don't understand the distinction. I don't either. I don't understand. And it's something my criminal law professor would have quizzed us about in first year criminal law. But I really don't understand why we have that distinction anymore. Although one possibility is that without intent might be a lesser punishment range. Maybe that's why states still have those distinctions. I don't know. I can see how somebody could stumble into the wrong house or wrong apartment and see that flat screen TV he couldn't live without and bring it out with him. Well, that makes perfect sense. So I would submit that this error, in spite of Ramirez, in spite of Emory, that this error is clear, obvious, and not subject to reasonable debate based upon what I've just argued. I've discussed how this affects substantial rights because of the 2014 Guideline Amendment, which changes Mr. St. Clair's sentencing range. Of course, there's sort of a circularity there. That is, if it's not a career offender designation that sticks, then there's no effect on substantial rights on that basis. Well, I had not thought of that. We wouldn't have to get to whether it was open to debate. Oh, I had not thought of that aspect of it. Well, at this moment, he is a career offender. At this moment, that would be true. So this court would have to change. That step would have to be taken for any of the other possible remedies in favor of my client to occur. If the court can't do it on its own, we would have to do that. Unless we remanded. Well, right. Yes, it would have to be remanded to the district court. We would have to find that the two offenses were not crimes of violence. Yes. Yes, that is correct, Judge Clayton. He was not a career offender. Yes. Because only one of his three burglaries was under A-1. The other two were under A-3 based on the wording of the indictment and the language in the other documents. And I think the government would still agree with that position. The government would just disagree about whether the error is clear or obvious based upon the conflicting case law out there. If there are no other questions, I will sit down and I will come back for my five minutes of rebuttal. Okay. Thank you, Mr. Sherwood. Okay, Mr. Gay. Good morning. May it please the court. Well, I guess I'd like to begin with the idea that because we have four enumerated offenses, whether those would exclude the operation of the residual clause. And I think that if we go back and look at Taylor, which was sort of the beginning of all of this, that it's clear what the state labels an offense is not controlling. And so, for example, if A-3 was labeled home invasion, which is sort of akin to what it could be without meeting the definition of generic contemporary burglary, it would seem much more persuasive, I think, in the context of it being a crime of violence. But here, the way the statute is structured, it clearly says it's one of the four or conduct that presents a serious potential risk of physical injury to another. And that's where I think the James case is very instructive, because if you look at the type and risk associated with the elements of what would be classified as a burglary, it has to be a serious violent felony. And they talk about how when you break into a house, there is a significant risk of an encounter with a third party, an innocent person, law enforcement responding. And so it necessarily is of the type of offense that would involve a serious potential risk of physical injury to another. Well, if you just stumble into the wrong house, you have that risk, too, don't you? If you stumble into the wrong house, I think that the difference, though, is the Supreme Court has made clear, we have to have intentional conduct, and that's what the statute does require. You're in the house? He wants to pick up that beautiful flat screen TV and somebody comes downstairs. Well, that would be intent after you, that would be a larceny, essentially, after you enter. It would meet A3, though. It would be an A3 burglary. A3 requires a willful intent. Let me go back and look at the language. But I believe that there is an intent requirement under A3 that would prevent it from being a mere larceny. That's not what it says. Do I have that wrong? A1 has intent. Okay, so A3. Essentially, in this case, though, I believe that if you look at the entry into a home, necessarily is going to involve a serious risk of physical injury to another, which would bring it within the ambit of... What if the person thought the place was abandoned? Well, I suppose... And I'm not sure whether that would really matter in terms of the risk that could result. It seems to me that if you look at Sykes and James and all the Supreme Court cases that have looked at these issues, they have applied the residual clause where we have conduct which would otherwise raise that risk. And so in this case, I believe that the risk is clearly there. And it's hard to distinguish. And I think as Ramirez and Emery in those cases point out, certainly getting back to the idea of whether this is plain error, I don't think that the error is clear or obvious in this case as well. And I think that's the other backside to this issue. One final complication, which I'm not really prepared to address today, but the Supreme Court has granted certiorari in a case called Johnson that's going to be argued in two weeks regarding whether the residual clause is unconstitutionally vague, which may also impact whether this court would hold its decision to reach that result. How would you respond to the concern that was raised in, I believe, Emery, that the residual clause has proven very difficult for courts to apply consistently, and this is an area in which the need for guidance in advance that is both clear and consistent is paramount? There's a nice discussion of that issue in the Supreme Court's Sykes opinion, where Justice Scalia, in his dissent, raises his argument about the need for a... Bright line, basically. Yes. He believes it's unconstitutionally vague. The majority opinion does a very nice job of explaining that district courts make tough decisions all the time, and that... You know what? To be putting my district court hat on, that is not comfortable or comforting. I didn't bring... That's true, but... I didn't bring the opinion up with me to read the exact verbiage, but that's the gist of what... That just states the problem. And the majority says that Congress can put that burden on district courts is more or less what the majority in Sykes said. And so there are concerns, and that aspect of the residual clause is going to be addressed in a couple of weeks at oral argument. The briefs have been filed already, and that is a substantial question as well. But I do believe... The problem is the majority of the Supreme Court were never serving as district judges. There you go. They don't really have the big picture. As we all know, this categorical analysis, and for those of us that practice in this area routinely, is just fraught with difficulty. It's not just a problem for district judges. It's people who are negotiating on behalf of their clients. And it's unfortunately, I think, tailored. And it's all... It's been an aggregation over a period of time, and this court's precedents have evolved trying to deal with, at some point, a common sense approach, various attempts to make it simpler. But it remains, in some cases, almost a requirement of a 50-state survey to determine the generic contemporary meaning. But here, though, getting back to the final... The ebb of this thing, I think that the most direct route is to say that the error in this case was not obvious. It was not plain. Well, if Constante controlled, it was clear and obvious, wasn't it? But I think it's clear from Ramirez and Emory that it didn't address this particular issue. The residual clause issue was never addressed in Constante. He said it was not a crime of violence. But under the enumerated, generic... The holding is this is not a crime of violence. So didn't they implicitly decide it didn't come under the residual clause? In Ramirez, which was the case that came out... No, no, I'm talking about Constante. Right. But it actually said that Constante did not reach that issue. Well, I mean, they can say that, but that's the holding of the case. And so I think narrowly construed, that is the holding. And whether you want to read it expansively, you could, I suppose. But I think that it's clear that the court never did address and the parties did not raise. You don't have to discuss every issue. Don't you look at what the court holds, what the ultimate holding is to see what the case holds? Well, I think that that certainly is one part of it. But I do think, given this court's request for briefing today, that it is an area that is certainly subject to debate. And I think that there's very strong arguments, if you read James, that this is the exact sort of case that would fall within what the residual clause is attempting to cover. I think that, like Sykes and the other James in the attempted burglary discussion, which is very similar to burglary but not quite burglary, is very similar to what we have under A3 in the sense that it's not quite burglary under the generic sense, but it's very akin to what we would ordinarily consider to be burglary with the elimination of having to have intent at the time to enter, which was what A1 requires. So with that, are there any further questions? You're just leaving the mess with us, right? Well, I think, as best I can, I think I've made a very strong argument as to why the residual clause should apply to A3. I think it falls within the exact sort of conduct, the same seriousness, the same risk of violence. And so I think James makes clear and Sykes makes clear that you can't take a nonviolent offense and try to shoehorn it in there, that it has to be of a similar nature. And that's clearly what A3 is. It is of a similar nature. And so it necessarily presents the sort of risk that generic burglary would present, and it presents the sort of risk that the residual clause requires, and that is the substantial potential risk of serious physical injury, whether to the homeowner, a third party, police, whoever's responding. Okay. Thank you, Mr. Giddey. James Sherwood. Thank you, Your Honor. Very briefly, A3 may be similar to a burglary, but it's still a burglary. And Constante did hold that burglaries were not violent felonies under the ACCA. And I suppose one reason the parties may not have argued that burglary would have applied under the residual clause is because burglary is one of the named offenses. And as this Court stated in Ellis in 2009, which I cited in my supplemental brief, the quoted portion in that brief talks about how an offense can be an enumerated offense or it can be in one of the two general clauses, which tells me that an offense cannot be in multiple parts of the guideline or of the statute. It has to be in one or the other. So because an A3 burglary is still a burglary, I believe Constante controls. I needed to correct my March 30th Rule 28J letter. I read the Begay case incorrectly. I was so excited about the language in the opinion that talked about how an enumerated offense could not be in Clause 1. I just totally misunderstood what Justice Breyer was saying in that. I thought he was saying the argument that I'm making today, but what he was actually saying was when he was talking about Clause 1, which I point out in that letter, he's talking about the risk of violence or risk of force. So I would suggest to the Court that it can just ignore my March 30th letter because I just made a reading error in that. However, my argument that burglary is controlled by the first portion, the first clause of that clause, because it's one of the named offenses and, therefore, it cannot be in the otherwise or residual clause, that argument is still good simply just because of the plain English that this is a burglary, there's burglary, that's the part of the statute or the guideline that controls. If we interpret A3 burglaries as being in the residual clause, then we might as well just erase, and the residual clause controls everything. And in some ways, all offenses would be, could be in the residual clause, and the residual clause would swallow up everything else. If there are no other questions, I thank you for your time. Okay, and we thank you.